GRIMES ET AL. *v.* MORELAND ET AL.

[Cite as Grimes v. Moreland (1974), 41 Ohio Misc. 69.]

(No. 72CV-08-2487—Decided June 26, 1974.)

Common Pleas Court of Franklin County.

*Robins, Preston & Beckett Co., L. P. A.,* and *Mr. John F. Gugle,* for plaintiffs.
*Messrs. Tidwell & Lunsford* and *Mr. Alan Lunsford,* for defendants.

PADDOCK, Referee. Pursuant to Rule 53, the referee makes the following findings of fact, conclusions of law, and recommendation based on the pleadings, stipulations, exhibits, view of the premises, and arguments of counsel.

FINDINGS OF FACT

1. The Broad-Brunson Place Condominium is a 17-unit residential building on a parcel of land in Columbus, Ohio, bounded by East Broad Street, Brunson Avenue, Long Street and Monypenny Avenue. The building and land were submitted as condominium property by the execution and filing of a declaration, pursuant to R. C. Chapter 5311, in September 1963. The declaration contained all the proper information required by R. C. Section 5311.05, including the By-Laws of the Unit Owners' Association.

2. The By-Laws of the Unit Owners' Association were amended in November of 1971 by a vote of more than 75% of the voting power of the Unit owners, as required by R. C. 5311.05(B)(9) and the By-Laws. The particular portions of the Amended By-Laws relevant to this litigation are:

*Article VIII—Administrative Rules and Regulations, Section 1.* The board of managers may adopt administrative rules and regulations governing the use and operation of condominium property not in conflict with the declaration or these By-Laws and amendments thereto by a vote of a majority of the members of the board. Such Administrative Rules and Regulations shall be recorded with the secretary-treasurer and shall be sent to each unit owner by registered mail prior to the effective date of their application.

*Section 2.* Such Rules and Regulations may be amended from time to time by a majority vote of the members of the board of managers or by a vote of at least seventy-five percent (75%) of the voting power of the Unit Owners' Association at the annual meeting or at a special meeting of the same.

*Article IX—Use Of Unit And Compliance With By-Laws, Section 1.* Each unit shall be used and occupied only as a private dwelling by the owner or his tenant. Each unit or any part thereof shall not be used for any other purpose. Each owner or any other occupant of the unit shall respect the comfort and peace of mind of his neighbors, as well as other occupants of the condominium. Each owner shall not do, or permit to be done, or keep in the

unit, anything which will increase the rate of fire insurance for the condominium, or do or suffer to be done any act or thing which shall be a nuisance, annoyance, inconvenience, or damage to the unit or any occupants of the condominium.

*Article X—Unit Ownership.*

*Section 1.* Ownership of a unit includes the right to exclusive possession, use and enjoyment of the surfaces of all its perimeter walls, floors and ceilings, and of all supporting walls, fixtures, and other parts of the building within its boundaries, as well as the garage space assigned to the unit, including the right to paint, tile, wax, paper, or otherwise finish, refinish or decorate the same.

3. The schedule of units, filed as part of the original declaration, states as follows:

"All are contained within the boundaries of the condominium and not specifically designated as part of a unit is common area. All utilities located within any unit but not serving that specific unit alone are common facilities. All utilities outside the limits of any units are common facilities."

4. The original declaration was amended in September of 1971, "to permit fencing and other items on common ground for the purpose of inclosing portions of common area to be used as patio."

"It is hereby declared that all requests for such fencing shall be submitted in writing along with the plans as to design, uniformity and control, to the board of managers, and their approval with written consent must be given by the board of managers in each case.

"It is further declared that any gates, a part of such fencing, shall be kept unlocked. Unit Owners may beautify their area by planting of flowers and shrubbery without submitting written plans."

This amendment to the declaration was approved by 75% of the unit owners. The signatures of the owners of 14 units appear on the amendment as filed with the County Recorder, the signatures of 5 unit owners (numbers 3, 4, 8, 9, and 15) do not.

5. On February 10, 1972, the Rules and Regulations

of the condominium were adopted, which contained the following provision:

8—*CONSTRUCTION*

"No unit owner may erect, or cause to be erected, any structure, fence, or other item, or in any way change or alter the now existing contour of the outside of the property without written consent of the board of managers. Plans, as to design, uniformity and control, have to be submitted to the board of managers in writing. Locked enclosures prohibited. An exception to this rule may be: unit owners may beautify their area by planting of flowers and shrubbery without submitting written plans."

6. Since the date of the last amendment to the declaration and the adoption of the Rules and Regulations pertaining to fences, defendant Jerry Glick has built a redwood fence, roughly 6 feet high, enclosing a rectangular area on the east side of the condominium at the rear area of his unit. Mr. Glick obtained written permission for his fence. Defendants Stephan Ely, Randall Jester and Lyle Smith have applied to the board for permission to build similar fences, and have received conditional approval pending the outcome of this case.

7. Plaintiffs H. Coleman and Mary Grimes and several of the defendants have placed air conditioner compressors on the common area east of the condominium. Mr. and Mrs. Grimes' compressor is a green metal device, roughly 2 feet wide, 3 feet long and 2 feet high. Other compressors are of similar size. Defendant Smith's is a larger heavy duty model. The compressors were installed at various times. No section of the declaration, by-laws or rules and regulations deals directly with the matter of air conditioner compressors.

8. On the 27th of August, 1969, plaintiff H. Coleman Grimes, as secretary-treasurer of the association, signed a lease form with the appropriate blanks filled in, purporting to lease an area of the condominium blacktop to Diversified Janitorial Service for a 5-year period, at a rent of $20 per month. The form was never attested to or acknowledged pursuant to R. C. 5301.01. There is no indication that the association authorized this transaction. The lease,

with a 5-year option clause, expires on August 31, 1974. The lease has been ratified by almost 4-½ years of rent collection by the association.

9. The controversy regarding Edna Moreland doing business as a real estate broker from her unit is now moot.

10. There is no evidence that any party suffered damages as a result of the actions of another party.

### CONCLUSIONS OF LAW

1. The key issue in this case is whether placing fences and air conditioner compressors on condominium common areas is a "use" of the property requiring association board approval and compliance with the provisions of the declaration, amended by a 75% vote of the unit owners, or is a taking of common area property affecting the percentage of undivided interest of the other unit owners requiring unanimous approval of an amended Declaration. This is a case of first impression in Ohio and perhaps even in the United States.

Based on the language of R. C. Chapter 5311, it is the conclusion of the referee that placing fences and compressors on condominium common areas constitutes a taking of property and an ouster of co-tenants from common areas subject to all owners' undivided interest such as to require unanimous approval of an amendment to the declaration. This conclusion is based largely on R. C. 5311.04, "Ownership of common areas and facilities." Subsection (A) states that ownership of common areas shall remain undivided. Six-foot-high redwood fences, even if unlocked, do divide the common area into identifiable zones adjacent to particular units with an implied desire for privacy which would deter, if not stop, other unit owners from strolling, dog walking, or toddler exercising in the fenced off area. The rights to the common areas may not be waived, released or partitioned by civil suit through the action of any unit owner acting alone. Subsection (D) provides that the common areas be used for their intended purposes without hinderance or encroachment of other unit owners lawful rights. Again, fences and compressors do stop others from walking, etc., on the ground they enclose or occupy.

Subsections (B) and (C) pose a problem for deter-

mining the manner in which condominiums can allow immovable objects such as fences, compressors, and brick barbecues to be placed on common areas for use by or benefit to less than all of unit owners. R. C. 5311.04(C) allows change in the *percentage* of interest in the common areas only by unanimous amendment of the declaration. Fencing-in of one area for almost exclusive use of one unit owner will not alter the percentage interest of the other unit owners (each will still have his approximately 6% interest) but it will mean that each unit owner will have 6% of the smaller remaining common area. Unfortunately, neither the declaration, by-laws or statutes of Ohio expressly provide for a means of converting common area into limited common area or unit owner's property. As erecting fixed objects on common areas does constitute a taking of property the subject of the undivided interest of all unit owners, it is proper to require unanimous approval of such a change. To do otherwise would allow unit owners in control of 76% of the voting power to take common area from those with 24% of the voting power through amendment of the declaration.

Therefore, the erection of fences and installation of compressors without unanimously approved amendments to the declaration is improper.

2. The purported lease of blacktop to Diversified Janitorial Services is a legal nullity as the document was executed without proper statutory formalities and was not an act authorized by the Board.

RECOMMENDATIONS

1. Both the fences and the compressors are on common areas in violation of R. C. 5311.04. The referee considered the two forms of taking common area to be indistinguishable and not susceptible to a *de minimus* treatment. However, as each unit owner in good faith relied on the then apparent propriety of the 75% approved amendment to the declaration in erecting their fences, and as lack of air conditioning in Columbus summers can severely reduce the comfort of any habitation, the unit owners will have 90 days from the date of final judgment of this Court

to remove all air conditioner compressors and fences. Planted shrubs and flowers may remain.

2. As the association has received the benefit of the monthly rental of the blacktop to Diversified Janitorial Services, for 4-½ years, the lease agreement has been ratified. The association may still remedy the problem by not renewing the lease when it expires August 31, 1974.

3. As there is no statutory provision in R. C. Chapter 5311 for an award of attorney's fees, each side must pay their own counsel.

4. Therefore, the referee recommends that judgment be entered for plaintiffs and against the defendants on the issue of removal of fences and for defendants against plaintiffs on the issue of damages and attorney fees, and, on defendants' counterclaim, for defendants against plaintiffs on the issue of removal of air conditioner compressors and for plaintiffs against defendants on the issue of damages and fees.

### JUDGMENT

This matter having come on for hearing on the pleadings, stipulations of counsel, exhibits and view of the premises, upon the evidence adduced it is accordingly, ordered, adjudged and decreed that judgment be entered for plaintiffs and against defendants on the issue of removal of fences, and for defendants against plaintiffs on the issue of damages and attorney's fees, and, on defendants' counter-claim, judgment in favor of defendants against plaintiffs on the issue of removal of air-conditioner compressors, and for plaintiffs against defendants on the issue of damages and fees.

It is therefore, ordered that all fences and all air-conditioner compressors be removed from the common area within ninety (90) days from this date.

*Judgment accordingly.*