**BOARD OF DIRECTORS OF BY THE SEA COUNCIL OF CO-OWNERS, INC., Appellant,**

v.

**Melvin SONDOCK, et ux., et al., Appellees.**

No. 2358cv.

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1982.

Rehearing Denied Oct. 21, 1982.

Roland L. Bassett, Carla Cotropia, Mills, Shirley, McMicken & Eckel, Galveston, for appellant.

Ervin A. Apffel, Jr., McLeod, Alexander, Powel & Apffel, Galveston, for appellees.

Before UTTER, KENNEDY and GON-ZALEZ, JJ.

## OPINION ON MOTION FOR REHEARING

GONZALEZ, Justice.

The opinion of this Court announced on August 26, 1982 is hereby withdrawn and this opinion is substituted therefor.

This is an appeal in a suit for a permanent injunction. The Board of Directors of By the Sea Council of Co-Owners, Inc., appellants, sought to remove the carports assigned to the apartment owners at the By the Sea Condominium and promoted and obtained an amendment to the Condominium Declaration that gave them authority to remove them. Melvin Sondock, et ux, et al, appellees, filed suit to enjoin the Board from removing the carports and to order the Board to repair the carports. The Board filed a plea in abatement on the grounds that not all of the owners were joined in the suit and that each was a necessary party because the relief sought affected the rights of all of the owners without giving them an opportunity to be heard. The trial court denied the plea in abatement and proceeded to trial.

After a trial without a jury, the trial court granted a permanent injunction which prohibited the Board from removing the covers over the carports, required the Board to repair the carports and to "allot and derive the funds" for the repairs from the annual maintenance fund; declared that the amendment to the Condominium Declaration was void; and ordered that the business records be kept on the premises of the condominium project.

Extensive findings of fact and conclusions of law were made and are recited in the judgment. They are found in an appendix to this opinion.

The Board appealed and contends that the trial court committed error in: (1) denying the plea in abatement, (2) in holding that the amendment to Condominium Declaration was void, and (3) in ordering that the condominium records be kept on the premises.

By cross-points, the appellees contend that the trial court erred in: (1) permitting the Board to pay the attorney's fees and court costs from the funds belonging to the Council of Co-Owners, (2) in finding that the amendment in question received the consent of more than 66⅔% of the owners, and (3) in denying appellees attorney's fees. We affirm in part and reverse and render in part.

The main issues in this case are the validity of the amendment to the Condominium Declaration and whether all owners in the condominium project must be joined as parties in a suit which affects the interest of the absent owners in the context of these facts.

The Declaration establishing the condominium project was adopted pursuant to the Texas Condominium Act, Tex.Rev.Civ. Stat.Ann. art. 1301a, and was recorded as required by the Act.

The Texas Condominium Act provides for the creation of condominium projects

through compliance with its provisions.[1] Section 7 of the Act requires that the Declaration provide a legal description of the land, description of the apartments, the description of the "general common elements", and the "limited common elements" as those terms are defined in the Act. In addition, Section 7 provides that the Condominium Declaration may contain *any further provisions, matters, or covenants desired.* (Emphasis added) One of the provisions in the Declaration of By the Sea is the right to amend the Declaration.

Under the Act, a condominium project is broken down into two classifications; (1) individual apartments, and (2) common elements.

1. The *individual apartments,* which are generally described as each individual apartment to the inside perimeter of the apartment's walls. Individual apartments are subject to individual ownership, in the same manner as any other property.

2. The *common elements,* include everything not included in the definition of the individual apartments. Common elements are owned as tenants in common by all the owners of the apartment units in undivided shares, not subject to the right of partition. Common elements, in turn, are further broken down into two categories:

a. *General* common elements, which are defined as all of the condominium project, excluding the individual apartments, and excluding those items which are defined as *limited* common elements. Sec. 2(1)(2) includes "roofs" as a general common element.

b. *Limited* common elements, are those common elements which have been agreed upon by all of the co-owners to be reserved for the exclusive use of one or more apartments to the exclusion of all other apartments.

In accordance with the Act, the Declaration for By the Sea defines these various terms, including: (1) the apartments, which are individually owned, and (2) the common elements, which are owned in undivided shares by all of the owners of the individual apartment units. The term "common elements" is further broken down into "*general common elements*", which are defined to mean all of the common elements except for the limited common elements, and "*limited common elements*", which are defined in the By the Sea Declaration to include only the parking spaces and the storage lockers, one of each being assigned for the exclusive use of the apartment to which it is assigned.

█ The Board contends that the nature and use of the common elements may be modified from time to time, provided the Condominium Declaration is properly amended in accordance with the Declaration. We agree.

### Plea In Abatement

In the first point of error, the Board contends that the trial court erred in overruling their plea in abatement. This plea sought to abate the suit unless and until all condominium owners were joined as parties. The Board argues that each condominium owner is a necessary party because the relief sought by the appellees would substantially affect the rights of the absent owners without giving them an opportunity to be heard. Specifically, the interest of the absent owners would be affected because even though 66⅔% of them consented to the removal of the carports, appellees were seeking that the court order *all* of the owners to bear the expense of repair and maintenance of the carports.

The Board contends that subdivision (a) of Rule 39, Tex.R.Civ.P. clearly requires that individuals claiming an interest which would be affected or prejudiced by the judgment in the case shall be joined. Therefore, appellees should have been required to join 100% of the condominium owners in the action.

---

1. See Mixon, Apartment Ownership In Texas: Cooperative and Condominium, 1 Houston, L.Rev. 226, 238 (1964) for an excellent discussion and analysis of the Act.

Subdivision (a) provides that certain persons "shall be joined," but there is no arbitrary standard or precise formula for determining whether a particular person falls within its provisions. Thus, when a person cannot be made a party, the court is required to determine "whether in good conscience the action should proceed among the parties before it, or should be dismissed. . . ."

Subdivision (b) of Rule 39 provides a basis for a determination of whether the action should proceed in the absence of parties described in subdivision (a). In *Clear Lake City Authority v. Clear Lake Utilities Co.,* 549 S.W.2d 385, 389 (Tex.1977), the Supreme Court, citing Rule 39 relied on those factors enumerated in the Rule which were as follows:

"first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."

Furthermore, the Supreme Court has held that:

"Under the provisions of our present Rule 39 it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined. Although not of controlling importance, the very title of the rule has been changed from "Necessary Joinder of Parties" to "Joinder of Persons Needed for Just Adjudication." Subdivision (a) provides that certain persons "shall be joined," but there is no arbitrary standard or precise formula for determining whether a particular person falls within its provisions." *Cooper v. Texas Gulf Industries, Inc.,* 513 S.W.2d 200 (Tex.1974). See also: *Cox v. Johnson,* 638 S.W.2d 867 (Tex.1982).

In *Scott v. Williams,* 607 S.W.2d 267 (Tex. Civ.App.—Texarkana 1980, writ ref'd n.r. e.), various owners of apartments in a condominium brought suit against certain owners who additionally served as members of the regime's board of administration, alleging that the defendants controlled the affairs of the regime for their own personal gain and had mismanaged its affairs and misapplied its funds. The suit sought damages as well as injunctive relief against future acts of mismanagement or misapplication of funds. The defendants urged a plea in abatement based on the failure of plaintiffs to join all condominium unit owners individually as parties. The trial court granted a judgment for damages and ordered that the money be spent for repairs and maintenance of the common elements and also enjoined the Board to act in accordance with the Act. On appeal, the court held that the plaintiffs could not maintain an action against the condominium's Board for damages on behalf of the absent owners. The basis for the court's holding that all of the owners must be parties before damages may be awarded was that the "interest of the absent owners [would] . . . be *affected* by the judgment [and] . . . they [had] not had their day in court." The court further stated that "Even under the liberalized version of Rule 39, specifically subdivision (a)(2)(ii), the absent owners should have been made parties." The court, however, did allow injunctive relief to stand, reasoning that one cotenant may seek injunctive relief to preserve and protect the property. On this issue, the court held that not all co-owners need be joined as parties because the relief sought and obtained essentially requested the Board to manage the condominium in accordance with the Texas Condominium Act and expend and account for the funds in accordance with good accounting practices.

The suit here was not filed as a class action under Tex.R.Civ.P. 42. The appellees did not purport to represent a class consisting of all the individual owners nor

did appellees contend that the Board were representatives of a class.

Without a doubt, the absent owners would be affected by the court's order. This is so because the trial court directed that in order to make the repairs and maintain the covered parking in good repair, the Board was to allot and to derive the funds for this construction and maintenance from annual common expenses from their annual budget and from *all* of the owners. This means a special assessment to all the owners. Even assuming that the money could be found in the budget without a special assessment to all owners, the rights of the absent owners would still be materially affected. Even though 66⅔% of the owners gave their written consent to an amendment to the Condominium Declaration so that the carports could be removed, they were ordered to share an expense they had consented to eliminate. This notwithstanding, failure to join the absent owners did not deprive the court of jurisdiction and it was not error for the court to deny the plea in abatement.

*Amendment to Condominium Declaration*

In points of error two through five, appellants contend that the trial court erred in holding that, (1) the Board could not eliminate the covers over the parking facilities in accordance with an amendment to the Condominium Declaration; (2) that the covered parking at the condominium project is a property right and that it could not be directly or indirectly eliminated or impaired by an amendment to the Condominium Declaration; 3) that the covers over the parking facilities could not be eliminated without prior approval of 100% of the condomin-

ium owners; and 4) that the elimination of the covers over the parking facilities had the effect of changing each owner's percentage of undivided ownership in the common elements which required the unanimous consent of all the owners. We agree with appellant's contentions.

The Board, pursuant to paragraph 40 of the By-Laws promoted the following amendment to the By-Laws:

"The parking spaces which are 'Limited Common Elements' as defined in the Declaration may be covered or uncovered from time to time as determined by the Board of Directors of the By The Sea Council of Co-Owners, Inc."

66⅔% of the owners consented in writing to this amendment.[2]

Appellees contend that they bought their apartments in reliance upon the continued existence of covered parking and that covers over the parking facilities *were vested property rights* that could not be taken away without their consent. Specifically, appellees contend that the removal of the covers from their assigned parking would decrease each unit owner's "percentage of undivided interest" in the common elements and this could not be done without 100% approval of all of the owners. Their authority for this proposition is paragraph 11 of the condominium By-Laws.[3]

It is undisputed that each person who purchased a condominium unit in By the Sea Condominium project purchased the unit subject to the terms of the recorded Condominium Declaration and to all of the restrictions and conditions in the Declaration. Paragraph 40 of the Declaration as we have previously noted provides that the

**2.** "40. AMENDMENTS—The provisions of this Declaration may be changed, altered or amended only with the written consent of Unit Owners ... who in the aggregate own at least 66⅔% of the common elements, and each such amendment shall be filed for record in the same manner as this Declaration..."

**3.** "11. PROPORTIONATE OWNERSHIP OF COMMON ELEMENTS, SHARE OF COMMON EXPENSES AND VOTING RIGHTS,—The percentage interest which each Apartment bears to the entire condominium regime is set out in

the following "SCHEDULE OF PERCENTAGE".... The above percentages fixing the *percentage of undivided ownership interest* of each owner in the common elements and his share of the common expenses and voting representation *cannot be changed* except by the written consent of *each and every owner* and mortgagee of all apartment units in this condominium project, duly executed, acknowledged and filed for record; ... [Emphasis supplied.]"

Declaration may be amended by the written consent of unit owners who own more than 66⅔% of the common elements.

Similarly, section 9 of the Texas Condominium Act also provides that apartment owners in condominiums accept the terms, conditions and restrictions in the Condominium Declaration by acceptance of deeds to the individual apartment units.

Also, paragraph 33 of the Condominium Declaration provides that each purchaser accepts all of the provisions of the Declaration by accepting a deed to the apartment unit and these restrictions and conditions shall be *covenants running with the land*.[4]

In the case here, the trial court found that the Condominium Declaration authorized amendment to the Declaration by the written consent of the unit owners who own, in aggregate, at least 66⅔% of the common elements. The trial court also found that the amendment to permit the elimination of the covered parking did receive written consent of the unit owners, owning an aggregate of more than 66⅔% of the common elements. However, the court concluded that because the covered parking is "a property right" the covers over the parking facilities could not be eliminated because any such change would require the unanimous consent of all the owners.

Since appellees acquired their condominium units subject to the Condominium Declaration which contains the right to amendment, we have to look at the amendment and determine whether the amendment is arbitrary and capricious, and/or whether the amendment changed the percentage of undivided interest in the common elements or whether it violates any other rule of law.

There are no Texas cases that we have been able to find that are directly in point. Therefore, we will look to other States to see how they have resolved similar disputes.

In *Mayfair Engineering Co. v. Park*, 318 So.2d 171 (Fla.App.1975), the Condominium Declaration reserved to the developer the right to assign for consideration 35 parking spaces, which were limited common elements of the condominium. The unit owners later objected, arguing that title to the 35 parking spaces, became vested in the unit owners and that therefore the developer was no longer the fee owner, and had nothing to assign. The court held that although fee ownership of the 35 parking spaces was in the unit owners, nevertheless such ownership was subject to the restrictions set out in the recorded Declaration. The court stated:

> "The unit owners knew or should have known of this reservation clause in Article VIII of the Declaration when they purchased their condominium units and therefore were on notice then of their limited right and interest in the thirty-five parking spaces. Enforcement of the Declaration's terms thus cannot be said to work a hardship upon them." *Id.* at 173.

In *Seagate Condominium Association, Inc., v. Duffy*, 330 So.2d 484 (Fla.App.1976), an amendment to a condominium declaration restricted the right of the condominium unit owners to lease their apartments. The court held that the amendment allowing the lease prohibition was valid. The court stated:

> "Our courts have on several occasions pointed out the uniqueness of the problems of condominium living and the resultant necessity for a greater degree of control over and limitation upon the rights of the individual owner than might be tolerated given more traditional forms of property ownership." *Id.* at 486.

And in *Hidden Harbor Estates, Inc. v. Norman*, 309 So.2d 180, 182 (Fla.App.1975) the court stated:

---

4. "33. RIGHTS AND OBLIGATIONS.—The rights and obligations of the respective Unit Owners under this Declaration and the By-Laws, including amendments thereto, shall be deemed to be covenants running with the land, so long as the project property remains subject to the provisions of the Act ... Upon acceptance or recordation of any deed or other instrument conveying title to the Apartment Unit ... the Owner thereof shall be deemed to have accepted and agreed to and shall be bound by and subject to each and all of the provisions of the Act and of this Declaration and By-Laws, as now existing or hereafter amended."

"... each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic subsociety of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization."

*Kroop v. Caravelle Condominium, Inc.,* 323 So.2d 307 (Fla.App.1975), involved an amendment to a declaration which restricted a unit owner's rights to lease the apartment. After the plaintiff purchased an apartment, the Declaration was amended to prevent any owner from leasing his apartment more than once. The plaintiff contended, among other things, that the amendment was an infringement upon his basic constitutional right to own, possess and enjoy property. The trial court held that *Kroop* acquired the apartment with the knowledge that the Condominium Declaration might thereafter be amended and that the amendment was adopted in a proper manner and for a proper purpose. The appellate court affirmed.

In *Ritchey v. Villa Nueva Condominium Association,* 81 Cal.App.3d 688, 146 Cal. Rptr. 695 (1978), the condominium owners approved, by more than 75%, an amendment to the By-Laws which would limit occupancy in a portion of the condominium to persons eighteen years of age or older, if the occupancy would involve a period of 14 days or more. The plaintiff challenged the validity of the amendment, arguing that such an age restriction is per se unreasonable. The court acknowledged that the amendment to the By-Laws operated both as a restraint upon the owner's right of alienation and as a limitation upon his right of occupancy, but the court found that the amendment to the By-Laws was reasonable. The plaintiff also argued that when he purchased his condominium apartment it was referred to as "a family unit" and that he relied upon these representations. However, the court held that appellant purchased the apartment subject to the Enabling Declaration which specifically provided that the By-Laws could be amended.

In our case, the Declaration of By the Sea Condominium expressly states that the Declaration can be amended if the appropriate written consents are obtained. Appellees testified they bought their apartments in the belief that they had the right to a covered parking space, just as Mr. Ritchey believed he had a right to permit children to occupy his apartment. Further, as in the *Ritchey* case, at the time appellees purchased their apartments, the Declaration expressly stated that each purchaser accepted all the provisions of the Declaration, including the right to amend.

The trial court held that the elimination of the covers over the parking facilities had the effect of changing each owner's percentage of undivided ownership in the common elements, which under Section 11 of the Declaration required the unanimous consent of all owners. Section 11 does so provide, but is inapplicable here. If one or more of the unit owners appropriated a part of the common elements to his or her exclusive use, that appropriation would require the unanimous consent of all owners, and would not be permitted under Section 11. See, *Makeever v. Lyle,* 125 Ariz. 384, 609 P.2d 1084 (1980); *Grimes v. Moreland,* 41 Ohio Misc. 69, 322 N.E.2d 699 (1974). However, our case does not involve such an appropriation. Instead, by the amendment, the covers over the parking facilities may be removed for *all* owners. No owner has obtained an advantage over any other owner; and no owner has lost his percentage share in the common elements.

In summary, at the time of purchase of their units, appellees knew (or should have known) that they bought subject to all the provisions of the Condominium Declaration. One of these provisions was the right to amend the Declaration. The Declaration was amended properly and the amendment is not arbitrary or capricious. Therefore, appellants' points of error two through six are sustained.

## BUSINESS RECORDS

In their seventh point of error, the Board contends that the trial court erred in hold-

ing that all business records concerning the condominium must be kept on the premises.

Appellants contend that neither the Texas Non-Profit Corporation Act, Texas Condominium Act, or the By-Laws of the Condominium project, specify where records should be kept.

The By-Laws of the condominium project contain two pertinent provisions governing books and records. The first is found in Article VI, Section (c), which provides as follows:

"(c) [The board of directors shall] . . . keep or cause to be kept sufficient *books and records* with a detailed account of the receipts and expenditures affecting or concerning the common elements, the common expenses and the administration of the condominium regime established by the Declaration. Both the books and vouchers accrediting the entries thereon *shall be available for examination by all members of the Council at convenient hours on work days* that shall be set and announced for general knowledge. All books and records shall be kept in accordance with good accounting procedures and shall be audited at least once a year by an auditor outside of the organization, as provided for in the Condominium Act of the State of Texas." (Emphasis added)

Similarly, Article VIII of the By-Laws provides as follows:

"The books, records and papers of the Council shall at all times during reasonable business hours be subject to inspection by any member of the Council. The Declaration, the Articles of Incorporation, and the By-laws of the Council at the principal office of the Council where copies may be purchased at reasonable cost."

Section 14 of the Texas Condominium Act, Article 1301a provides in part as follows:

"Sec. 14 . . . . the person appointed by the by-laws of the regime shall keep or cause to be kept a book with a detailed account of the receipts and expenditures affecting the building . . . Both the book and vouchers accrediting the entries made thereon shall be available for exam-

ination by all the co-owners at convenient hours on working days that shall be set and announced for general knowledge. All books and records shall be kept in accordance with good accounting procedures and be audited at least once a year by an auditor outside of the organization."

Article 1396–2.23A of the Texas NonProfit Corporation Act provides:

"C. *All records,* books, and annual reports of the financial activity of the corporation *shall be kept at the registered office or principal office of the corporation* in this state for at least three years after the closing of each fiscal year and shall be available to the public for inspection any copying there during normal business hours. The corporation may charge for the reasonable expenses of preparing a copy of a record or report." (Emphasis added)

It is inconvenient and not very practical for an owner to go to somebody's home in a different city to avail himself of his right to inspect the books and records of the condominium as is the case here. Clearly, the legislative intent was to provide owners with ready access to the books and records of their condominium and the most logical place for keeping these records is on the premises. No abuse of discretion is shown. Appellants' seventh ground of error is overruled.

### *Appellees' Cross-Points of Error*

Appellees contend that the trial court erred in permitting the Board to pay attorneys' fees and court cost from funds belonging to By the Sea Council of Co-Owners. They argue that they were forced to bring the suit against the Board because the Board breached its management duty by failing to provide for the proper maintenance and repair of the covered parking and by ignoring the owner's prior vote to repair the carports.

It is clear from a review of both the Condominium Declarations and the By-Laws that the employment of an attorney

to represent the council and the expenses incurred in the employment of such attorney shall be a common expense of all owners. Paragraph 13(c) of the Condominium Declaration provides as follows:

"(c) Other Council Functions—The Council may undertake or contract for any lawful activity, function or service for the common benefit or to further the common interests of all Unit Owners. Such activities, functions, or services may include, ... the providing of legal and accounting services necessary or desirable in connection with the operation of the condominium regime or the enforcement of the provisions of the Act, this Declaration or the by-laws, and any other services for the benefit and enjoyment of all the Unit Owners."

Furthermore, Article X of the By-Laws provides that any officer or director will be indemnified for all costs, including attorney's fees, incurred by him in connection with any claim asserted against him, as follows:

*"Indemnification of Officers and Directors*

1. The Council shall indemnify any Director or officer ... of the Council *for expenses and costs (including attorneys fees) actually and necessarily incurred by him in connection with any claim asserted against him,* by action in Court or otherwise, by reason of his being or having been such Director or Officer, except in relation to matters as to which he shall have been guilty of negligence or misconduct in respect to the matter in which indemnity is sought." [Emphasis added.]

2. If the Council has not fully indemnified him, the Court in the proceedings in which any claim against any such Director or Officer ... has been asserted ... may assess indemnity against the Council ... for the amount paid by any such Director ... and any expenses and costs (including attorneys fees) actually and necessarily incurred by him in connec-

tion therewith to the extent that the Court shall deem reasonable and equitable, provided, nevertheless, that indemnity may be assessed under This Article only if the Court finds that the person indemnified was not guilty of negligence or misconduct in respect of the matter for which indemnity is sought."

Since ⅔ of the apartment owners adopted an amendment to the Condominium Declaration authorizing the Board to remove the carports, the Board acted in good faith in defending the suit. Appellees' first cross-point is overruled.

■ Appellees contend in their second cross-point that the trial court erred in finding that the proposed amendment in question received the consent of more than 66⅔% of the owners. They argue that the evidence does not support the trial court's finding and that the written consent forms were obtained after the date of the annual meeting.

There is no requirement in the Condominium Act or in the By the Sea Declaration that the consent forms be obtained by a certain date. Appellees did not otherwise challenge the fact that 66⅔% of the unit owners consented to the amendment.

With respect to this point, our case is analogous to *Harrison v. Air Park Estates Zoning Committee,* 533 S.W.2d 108 (Tex. Civ.App.—Dallas 1976, no writ). Here, the defendant purchased a subdivision lot, his deed providing that a restrictive covenant dealing with the construction of an airport hangar is binding until revoked or modified in whole or in part by a three-fourths majority vote of the then owners of the subdivision property. Thereafter, more than 76.4% of the owners of the lots in the development adopted an amendment to those restrictions. The amendment was first proposed at a meeting of the owners, but an insufficient number of owners was present. After the meeting, a petition was hand circulated to other lot owners and a sufficient number of votes were then secured. One of the points on appeal was that the

modification was void because the necessary "votes" were not obtained at the initial meeting. The court held that the amendment had been properly approved, and that personal contact with the owners after the meeting was a perfectly fair way to obtain the necessary votes.

Appellees second cross-point is overruled.

■ In their third cross-point, appellees contend that the trial court erred in denying their request for attorney's fees. They argue that the Condominium Declaration provides that carports are limited common elements reserved for the exclusive use of the owner or occupant and constitute a freehold estate which cannot be separately eliminated. Appellees conclude that this is a fundamental property right and that their suit was based on breach of a restrictive covenant.

Appellees cite *Inwood North Homeowners' Association, Inc., v. Meier,* 625 S.W.2d 742, (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ) for the proposition that attorney's fees are mandatory in case where the prevailing party asserted an action on breach of restrictive covenant pertaining to real property.

This case is not applicable to this suit. *Inwood North Homeowners'* deals with the mandatory recovery of attorney's fees pursuant to Tex.Rev.Civ.Stat.Ann. art. 1293b (Vernon 1977). Article 1293b provides:

(a) In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow a prevailing party who asserted the action for breach of a restrictive covenant, reasonable attorney's fees, in addition to his costs and claim.

(b) To determine reasonable attorney's fees, the court shall consider:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the expertise, reputation, and ability of the attorney; and

(4) any other factor.

In the case at bar, appellee *did not* base their action on breach of a restrictive covenant pertaining to real property. Therefore, this statute is not applicable. Furthermore, there was no testimony given concerning appellees' attorney's fees, and there is no evidence on which the court can base a finding of reasonable attorney's fees. Appellees' third cross-point is overruled.

The portion of the judgment of the trial court ordering that the business records of the condominium be kept on the premises is affirmed.

The portion of the judgment of the trial court declaring the amendment to the Condominium Declaration void and granting the injunction is reversed and it is here rendered that the amendment to the Condominium Declaration is valid and the injunction is dissolved.

The motion for rehearing is overruled.

### APPENDIX

"Having carefully considered the evidence and arguments, the Court makes the following findings of fact:

1. That Defendants, the Board of Directors of By the Sea Council of Co-Owners, Inc., Marshall Neipert, Roland Bassett, Lyn McClellan, Beverly Shapiro, Walt Neeley, George Kitchel, James Dailey, Charles Prokop and Harris Bateman, comprise the Board of Directors of a nonprofit corporation, duly formed and existing under the laws of the State of Texas;

2. That Plaintiffs, Melvin Sondock and wife, Ruby Sondock, Elbert W. Huber and wife, Maxine Huber, Donald Peaceman and wife, Ruth Peaceman, Joe Lebow and wife, Jeanette Lebow, John Kolenda and wife, Ruth Kolenda, A.J.R. Peterson and wife, Barbara Peterson, Davis Warehouse Company, by and through its President, Bob Davis, at all times material to this cause of action, were owners of nine (9) of the apartment units and the covered parking spaces assigned thereto within *By the Sea Condominium;*

3. That there are one hundred and four (104) apartment units and covered parking facilities at *By the Sea Condominium;*

4. That Plaintiffs purchased their apartment units in reliance upon specific representations that covered parking spaces were included in the sale as part of the property purchased;

5. That the Defendants, The Board of Directors of By the Sea Council of Co-Owners govern and control the management, maintenance and repair of such covered parking facilities;

6. That the covered parking structures on the premises of *By the Sea Condominium* are in a dangerous, deteriorated, dilapidated, corroded condition and in need of immediate repair, restoration and reconstruction; and that the Defendants have failed and refused to make needed repairs to such covered parking facilities;

7. That the Defendants attempted to authorize and permit the elimination of such covered parking facilities by an amendment to the Condominium Declaration for By the Sea, which states as follows:

"The parking spaces which are 'Limited Common Elements' as defined in the Declaration may be covered or uncovered from time to time as determined by the Board of Directors of the By the Sea Council of Co-Owners, Inc.;"

8. That unless the injunctive relief prayed for by the Plaintiffs is granted by the Court, the Defendants would actively eliminate, tear down and do away with covered parking at *By the Sea Condominium* or passively allow the corrosion and deterioration of such covered parking facilities effectively eliminating the Plaintiffs' use of covered parking;

9. That the Condominium Declaration for By the Sea authorizes amendments to such Declaration by the written consent of the unit owners who own, in the aggregate, at least sixty-six and two thirds percents (66⅔%) of the common elements;

10. That in accordance with the Condominium Declaration for By the Sea, the By the Sea Council of Co-Owners attempted to authorize and permit the elimination of such covered parking facil-ities by an amendment to the Condominium Declaration for By the Sea; at the time of the annual meeting of By the Sea Council of Co-Owners, Inc., September 13, 1981, the amendment had not received the written consent of the unit owners owning, in the aggregate, more than sixty-six and two thirds percent (66⅔%) of the common elements; however, at the time of trial the amendment, although not passed unanimously, had received the written consent of the required percentage of unit owners;

11. That the Condominium Declaration for By the Sea provides that the undivided ownership interest in covered parking, as a limited common element, shall constitute a freehold estate;

12. That Section 11 of the Condominium Declaration for By the Sea provides that the percentage of undivided ownership interest of each unit owner in the common elements cannot be changed except by the written consent of each and every unit owner;

13. That the amendment, as referred to in Finding (10) above, which attempted to authorize and permit the elimination of covered parking at By the Sea Condominium, did not receive the written consent of each and every unit owner; although such amendment did receive the written consent of the unit owners owning, in the aggregate, more than sixty-six and two thirds percent (66⅔%) of the common elements;

14. That the Defendants are responsible for the maintenance of all business records concerning *By the Sea Condominium,* and that not all such business records are available for inspection during normal business hours at the business office of *By the Sea Condominium* located at 7310 Seawall Boulevard, Galveston, Galveston County, Texas;

The above facts having been found and considered by the Court, the Court finds, as matters of law, the following:

1. That the right to covered parking at *By the Sea Condominium* is a freehold interest in land purchased by the individ-

ual apartment owners as part of the individual apartment units;

2. That the covered parking spaces at *By the Sea Condominium* defined as limited common elements in the Condominium Declaration for By the Sea, are a property right in real estate possessed by the owners of the individual apartments units to which each covered parking space is assigned;

3. That because covered parking is a property right, it cannot be directly or indirectly eliminated or impaired without the consent of each and every individual apartment unit owner;

4. That there is a latent ambiguity or inconsistency in the Condominium Declaration for By the Sea in regard to Declaration amendments affecting the ownership interest of the common elements;

5. That the proposed amendment to the Condominium Declaration for By the Sea which attempted to authorize and permit the elimination of such covered parking facilities would deny the unit owners the property right of a freehold estate, and in effect change the percentage of undivided ownership interest of each owner in the common elements; therefore, for such amendment to become effective it must receive the unanimous written consent of each and every unit owner pursuant to Section 11 of the Condominium Declaration for By the Sea;

6. That the Plaintiffs are entitled to a permanent injunction to preclude the Defendants from directly or indirectly eliminating or impairing the Plaintiffs' right to covered parking;

7. That because covered parking is a property right and because there is not 100% agreement, the Defendants are enjoined from constructively, directly or indirectly, doing away with covered parking by the failure to repair, rebuild, or maintain the covered parking facilities at *By the Sea Condominium;*

8. That the Texas Condominium Act and By-Laws of By the Sea Condominium require all business records concerning such Condominium project, both past and present, to be available for inspection during reasonable business hours at the business office of such Condominium located at 7310 Seawall Boulevard, Galveston, Galveston County, Texas.

9. The attorney's fees of the Defendants and Court costs to be charged by the Court in this suit maybe paid from the funds of By the Sea Council of Co-Owners, Inc.; and

10. The Plaintiffs' request for attorney's fees is denied.