UNITED STATES of America, on Behalf of Rebecca WOODRUFF, Plaintiff,·

v.

FAIRWAYS VILLAS CONDOMINIUM ASSOCIATION, Vicky Vaughn, and Ruby Anne Bailey, Defendants.

No. 5:94 CV 2148.

United States District Court,
N.D. Ohio,
Eastern Division.

March 9, 1995.

Annette G. Butler, Office of the U.S. Atty., Cleveland, OH, for plaintiff.

L. James Martin, Martin & Durr, Stow, OH, for defendants.

### ORDER

SAM H. BELL, District Judge.

Now before the Court is Defendants' motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6) for failure to state a claim upon which relief may be granted. Docket # 8.

## STATEMENT OF FACTS

Defendant Fairways Villas Condominium Association ("the Association") is a non-profit corporation formed pursuant to O.R.C. § 5311.08 for the purpose of administering the Fairways Villas Condominium property in Uniontown, Ohio. Each individual who purchases a unit within the condominium property becomes a member of the Association automatically and receives a voting right that corresponds with his or her percentage of ownership interest in the common areas and facilities of the property. A board of trustees, comprised of three members, governs the Association. Defendant Ruby Anne Bailey served as president of the board in 1991, and in 1992 Defendant Vicky Vaughn succeeded Bailey in that position.

Each unit within the condominium includes a private garage that stands apart from the dwelling. Residents may also park their automobiles on a "first come, first serve" basis in various parking spaces scattered throughout the property's common areas. Rebecca Woodruff, on whose behalf the government filed this suit, purchased a unit in the Fairways Villas in May of 1991. Because she suffers from several herniated discs, as well as chronic fatigue syndrome, Woodruff feared she would have difficulty on occasion spanning the fifty-some yards that separated her dwelling from her assigned garage. Shortly after taking residence, she asked the Association to designate the single, outdoor parking space that lay in the common area near her door a handicap parking spot. Woodruff renewed her request routinely, but the Association failed to grant it. Woodruff quit her dwelling in November of 1991 and eventually sold her unit on July 21, 1992.

In March of 1992, Woodruff filed a housing discrimination complaint with the Secretary of Housing and Urban Development pursuant to amended § 810(a) of the Fair Housing Act, 42 U.S.C. § 3610(a). After investigating Woodruff's complaint, the Secretary found reasonable cause to believe that the defendants had discriminated against Woodruff because of her handicap. The Secretary issued a charge under 42 U.S.C. § 3610(g)(2)(A), which the defendants chose to have resolved in a federal lawsuit, as permitted by 42 U.S.C. § 3610(o). The government commenced this action on October 17, 1994, and the defendants have since moved the Court to dismiss the complaint for, *inter alia*, its failure to state a cognizable claim for relief.

## STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of the complaint. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983), *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1065 (6th Cir.1984). The motion to dismiss under 12(b)(6) should be denied unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Nishiyama v. Dickson Cty.*, 814 F.2d 277, 279 (6th Cir.1987) (*en banc*). With these standards in mind, the Court will scrutinize the complaint in order to determine whether it states a viable cause of action.

## LAW AND ANALYSIS

Plaintiff claims that the defendants have violated 42 U.S.C. § 3604(f)(2), which makes it unlawful "[t]o discriminate against any person ... in the provision of services or facilities in connection with [a] dwelling, because of a handicap of ... that person." 42 U.S.C.A. § 3604(f)(2)(A) (West Supp.1994). "Discrimination" is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C.A. § 3604(f)(3)(B) (West Supp.1994). Plaintiff contends that, by denying Woodruff a re-

served parking spot, the defendants have refused to make a reasonable accommodation in the "rules, policies, practices, or services" of the Association.

Defendants raise three basic arguments in support of their motion to dismiss. First, they claim that the Fair Housing Act exempts condominiums from its scope. Second, they maintain that the Association and its board lacked the authority to grant Woodruff's request. Third, Defendants insist that the accommodation sought by Woodruff was unreasonable.

## I. Exemption.

The prohibitions against discrimination contained in 42 U.S.C. § 3604 apply to all but a narrow category of dwellings. 42 U.S.C.A. § 3603(a)(2) (West 1977). Among those dwellings exempted is "any single family *house* sold or rented by an owner," provided, *inter alia*, the owner did not rely upon a real estate agent or broker when selling the house. 42 U.S.C. § 3603(b)(1) (West 1977). At least one circuit has suggested that the use restrictions placed upon a unit in a cooperative or condominium property sufficiently distinguish it from a "single family house" to remove the unit from the scope of the exemption provided in § 3603(b)(1). *Massaro v. Mainlands Section 1 & 2 Civic Ass'n*, 3 F.3d 1472 (11th Cir.1993), *cert. denied* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994). The Court need not decide the question since the possibility remains that Woodruff purchased the unit through a sales agent. Accordingly, the Court cannot say at this stage of the proceedings that Plaintiff can prove no set of facts that would bring the condominium unit within the ambit of § 3604.

■ Defendants also note that, since the condominium unit in question was constructed prior to 1988, it is exempt from the accessibility requirements added to the Act in that year. 42 U.S.C. § 3604(f)(3)(C). The Court does not disagree. But Plaintiff has not alleged a failure by the defendants to comply with those construction requirements. Rather, Plaintiff claims the defendants refused to make necessary and reasonable accommodations in existing rules and services as required by § 3604(f)(3)(B). The regulations cited by the defendants impact claims arising under § 3604(f)(3)(C) but not those brought under § 3604(f)(3)(B). Defendants' exemption arguments do not justify dismissal of this action.

## II. Impossibility of Performance.

Defendants also contend that the Association simply lacks the authority to provide the "service" or "facility"—a designated parking space—requested by Woodruff. Therefore, they reason, they cannot be found to have violated the Act for failing to undertake an impossible task.

■ The declaration creating the condominium property designates "surface parking areas" as part of the common areas and facilities owned by all unit owners as tenants in common. Docket # 8, Ex. C, p. 6. § 5311.04 of the Ohio Revised Code places strict limitations on the sale and division of property within the common areas. Paragraph (A) provides: "The common areas and facilities of a condominium property are owned by the unit owners as tenants in common, and the ownership shall remain undivided." O.R.C.A. § 5311.04(A) (Anderson 1989). Additionally, paragraphs (D) states: "[T]he percentage of interest in the common areas and facilities of each unit as expressed in the original declaration shall not be altered except by an amendment to the declaration unanimously approved by all unit owners affected." O.R.C.A. § 5311.04(D) (Anderson 1989). And finally, paragraph (E) of the statute provides: "Each unit owner may use the common areas and facilities in accordance with the purposes for which they are intended. No unit owner may hinder or encroach upon the lawful rights of the other unit owners." O.R.C.A. § 5311.04(E) (Anderson 1989).

In requesting that a portion of the surface parking area be designated for her use only, Woodruff necessarily—and understandably— sought to restrict other unit owners' ability to utilize that parking area. The Court must agree with Defendants that the restriction requested constituted an easement, albeit of conditional duration, that would have interfered with other unit owners' proprietary

interests in the use of the common area. *Falls Homeowners' Ass'n, Inc. v. Aveyard,* No. 14250, 1994 WL 409626, at *3 (Ohio 2d Dist.Ct.App. July 27, 1994); *Sawko v. Dominion Plaza One Condominium Ass'n No. 1–A,* 218 Ill.App.3d 521, 529, 161 Ill.Dec. 263, 269, 578 N.E.2d 621, 627 (Ill.2d Dist.Ct.App. 1991).

Although O.R.C. § 5311.04 allows in paragraph (D) for the alteration of a unit owner's *percentage* of interest in the common areas of a condominium property, the statute does not—strictly construed—appear to permit the conversion of common area property into limited common area property or into the personal property of an individual owner. *Grimes v. Moreland,* 41 Ohio Misc. 69, 74, 322 N.E.2d 699 (Franklin County C.P.1974). However, at least two Ohio courts have construed the statute to allow such changes under the same condition required for an alteration in the percentage of interest, that is, by an amendment to the declaration unanimously approved by all unit owners. *Aveyard,* 1994 WL 409626 at 4; *Grimes,* 41 Ohio Misc. at 74, 322 N.E.2d 699. Thus, while Ohio law may permit an appropriation of property within a common area such as Woodruff requested, it requires the property declaration itself be amended to reflect the change by the unanimous vote of all unit owners.

This fact leads the Court to join the defendants' conclusion that neither the Association nor the members of its board (in that capacity) can be shown to have discriminated against Woodruff by sheer virtue of the fact that the Association did not secure a parking space for her. The Association had no authority to do so.[1] *See Sawko,* 161 Ill.Dec. at 269, 578 N.E.2d at 627 (holding that condominium property association improperly assigned exclusive use rights in handicap parking spaces without the prior approval of all unit owners). True, the individual members of the Association collectively held the power to provide Woodruff the parking space. But that power did not derive from their capacities as members. That is to say, no addition or amendment to the rules or bylaws of the Association would have satisfied the strictures of O.R.C. § 5311.04(D). This factor distinguishes the present case from the only truly analogous federal case the Court has located.

Phyllis Shapiro, the plaintiff in *Shapiro v. Cadman Towers,* 844 F.Supp. 116 (E.D.N.Y. 1994), resided in Cadman Towers, a cooperative housing corporation located in Brooklyn, New York. Each resident of Cadman Towers held a share of stock in the corporation, and the governing Board of Directors was elected from among the shareholders. *Id.* at 119. Because the corporation owned a greater number of apartments than on-site parking spaces, the parking spaces were assigned as they became available to residents identified on a waiting list. *Id.* at 120. Shapiro, who suffered from multiple sclerosis, purchased an apartment in 1990 and asked that she be given a parking space immediately due to her physical condition. *Id.* The corporation, acting through its board of directors, repeatedly denied this request. *Id.* Eventually, Shapiro sued the corporation and the president of the board for an alleged violation of, *inter alia,* 42 U.S.C. § 3604, claiming that the defendants had failed to make a reasonable accommodation in the corporation's rules and regulations. *Id.* at 117. Shapiro sought a preliminary injunction (under 42 U.S.C. § 3613(c)(1)) that would require the defendants to provide a parking space for her immediate use. *Id.*

Before granting Shapiro's application for injunctive relief, the district court considered whether she would likely succeed on the merits of her claim. *Id.* at 122. In so doing, it rejected the defendants' contention that parking was not a service or facility provided by or in connection with plaintiff's apartment. *Id.* at 124. The court stated:

> The first come/first serve policy is not … a creature of the lease to Ms. Shapiro's apartment or her contract of sale *but of the building's rules and regulations which*

---

1. Paragraph 1.G of the declaration purports to vest the Association with authority to grant easements on behalf of the unit owners for an unspecified period of time. Neither party has referred to this paragraph, perhaps because each believes, as does the Court, that the provision violates both O.R.C. § 5311.04 and the statute against perpetuities, O.R.C. § 2131.08.

*may be changed by the appropriate vote of all the members of the cooperative under the building's by-laws.*

*Id.* at 124. Thus, the parking space equaled a facility owned by the corporation and distributed to the residents of the apartment complex at its will as expressed in the by-laws.[2]

Failure to distribute corporate property in a nondiscriminatory way is (arguably) an act of misfeasance attributable *to* the corporation. In the instant case, however, the defendant Association holds no interest in the property Plaintiff would have it allocate. Accordingly, the Association (and its board) cannot be held liable for declining to do what it could not do: grant Woodruff the exclusive use of a parking space owned jointly by all unit owners.

### III. Reasonableness of the Accommodation Requested.

Because it has determined that the defendants may not be held liable under § 3604 of Title 42 for failing to accommodate Woodruff's request, the Court need not consider the reasonableness of that request. Moreover, it would appear to be inappropriate to address the question by means of a motion to dismiss.

### CONCLUSION

The indignity suffered by Woodruff is indeed deplorable and may suggest an intolerance on the part of her neighbors that, contrary to Defendants' suggestion, exceeds merely "poor manners." Nonetheless, the provisions of the Fair Housing Act do not appear to the Court to afford Woodruff a cause of action against the Association or its officers under the facts presented in the complaint.

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim (docket # 8) is granted.

IT IS SO ORDERED.

2. N.Y.Coop.Corp.Law § 14(h) provides that a cooperative corporation shall have the power to "set forth in its certificate of incorporation, by-laws or member contracts ... general rules as to

### JUDGMENT ENTRY

The court has filed its order of decision in the above-captioned matter, effectively concluding this case. Accordingly, this action is hereby terminated pursuant to Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

the property and funds of the corporation [and] the property rights, vesting rights and interests of members."